| 76 | 48 |
| 188 | 330 |

# LITTLE ROCK RAILWAY & ELECTRIC COMPANY *v.* NORTH LITTLE ROCK.

## Opinion delivered June 17, 1905.

1. INJUNCTION—RECIPROCAL EFFECT OF WRIT.—Where the city of Little Rock and a street railway company holding a franchise under it brought suit to enjoin the town of North Little Rock from holding an election for the purpose of annexing a portion of the territory of Little Rock to defendant, and the court refused to restrain the holding of such election, but restrained the declaration of the result until final hearing, which was in defendant's favor, such temporary injunction was reciprocally binding upon all the parties, so that an ordinance of the city of Little Rock granting to the street railway company a franchise to construct its railroad along the streets of the annexed territory, passed after such territory would have been annexed to the town of North Little Rock but for the injunction, was void; but a similar ordinance passed before the election was held, but after the injunction was granted, was valid.   (Page 56.)

2. MUNICIPAL CORPORATION—CONTROL OF STREETS—ESTOPPEL.—Although a municipal corporation is but a trustee for the public in regard to the control over its streets, it may estop itself from exercising the power to grant a franchise to a street-car company along the streets of a certain territory by procuring an injunction to restrain an adjacent municipal corporation from annexing such territory, if but for such injunction it would have no authority to grant such franchise.   (Page 59.)

3. PROCUREMENT OF INJUNCTION—IMPLIED CONTRACT.—Where a city procured an injunction *pendente lite* to restrain an adjacent town from annexing part of its territory and from granting any street railway franchise therein, it impliedly contracted that it would not take advantage of the restraining order to grant any such franchise, which, but for the injunction, would have been beyond its authority.   (Page 61.)

4. SAME—WHEN ACQUIESCENCE NO ESTOPPEL.—Where a city restrained an adjacent town from annexing part of its territory, and while the injunction was in force granted a franchise over such territory to a street railway company, the fact that during the pendency of the injunction the company expended large sums of money in constructing its road without protest or resistance on the part of the town did not estop the latter from contesting the validity of the franchise.   (Page 61.)

5. MUNICIPAL CORPORATIONS—ANNEXATION.—Under Kirby's Digest, § 5522, providing, in effect, that in proceedings to annex territory to municipal

corporations, the declaration of the vote favorable to annexation and entry thereof upon its record by the council constitute the annexation, the jurisdiction of the annexing municipality begins whenever the result of the election is so declared and entered, and does not relate back to the time when the election was ordered.   (Page. 61.)

6.  MUNICIPAL FRANCHISE—CONDITION PRECEDENT.—A stipulation in a municipal ordinance granting a franchise to a street railway company that, before the franchise could be enjoyed, the company should obtain consent of the county court to use a certain bridge which had been constructed by the county was a reasonable and enforceable condition precedent.   (Page 61.)

7.  REASONABLE TIME—HOW ASCERTAINED.—Where an ordinance granting a franchise to a street railway company stipulated that, before the franchise could be enjoyed, the company should obtain consent of the county court to use a certain bridge, the company was required to obtain the consent of the county .court within a reasonable time, in determining which the subject-matter and all the circumstance are to be considered. (Page 62.)

8.  SAME.—*Held* in this case that one month was not a reasonable time for the street car company to obtain the consent of the county court to use the bridge in question.   (Page 63.)

9.  APPEAL—RELIEF NOT ASKED BELOW.—The Supreme Court, on appeal, will not grant relief not asked in the trial court.   (Page 66.)

Appeal from Pulaski Chancery Court.

JESSE C. HART, Chancellor.

Affirmed.

STATEMENT BY THE COURT.

On the 16th day of March, 1903, the General Assembly passed an act authorizing parts of one municipal corporation to be annexed to another municipal corporation.   This act is contained in section 5522, Kirby's Digest.

On the 11th of May, 1903, petitions were filed with the town council of the town of North Little Rock, signed by a majority of the citizens of that town and a majority of the citizens of the Eighth Ward of the city of Little Rock, praying for the annexation of the Eighth Ward of Little Rock to the incorporated town of North Little Rock.   On the 15th of June, 1903, an ordinance

was passed calling for an election to be held in the affected territory on the question of annexation, pursuant to the terms of the act. The election was called for July 21, 1903. On the 6th of July, 1903, the city of Little Rock, its mayor and aldermen and numerous citizens and corporations—among the latter the appellant, which will hereafter be called "the street railway company"—filed a complaint in the Pulaski Chancery Court against the town of North Little Rock.

The complaint set forth fully the relation of the Eighth Ward to the city of Little Rock, and the alleged effect upon it and the city of Little Rock, should the proposed annexation to North Little Rock be consummated. The complaint alleged that the act under which the proceedings were progressing was unconstitutional for various reasons set forth therein, and consequently the whole proceeding under it was void, and sought to arrest by injunction the election ordered for July 21. The complaint further alleged:

"Complainants further state that, unless defendants are restrained from holding such election and proceeding further under said act, defendants will hold said election, will declare the result in favor of disannexation, and will then proceed to grant all kinds of franchises, privileges, licenses and contracts of public nature; that said franchises, privileges and contracts will conflict with those heretofore granted by the said city of Little Rock; that it will grant street car, lighting and water franchises to parties other than those to whom they have been granted by said city." Other probable conflicts in rights and jurisdiction were alleged to be imminent. The prayer was to restrain the holding of said election, and from taking any further steps towards annexing the Eighth Ward to North Little Rock. On July 16 a demurrer was sustained to the complaint, and the injunction refused, and the city of Little Rock and its co-plaintiffs appealed to the Supreme Court. The court was not then in session, and application was made to Hon. HENRY G. BUNN, then Chief Justice of the Supreme Court, for an injunction pending the appeal. The petition to the Chief Justice recited the status of the annexation proceedings and the litigation, and

alleged: "That for the reasons and grounds set forth and referred to in said complaint, and for others hereinafter set forth, it is of the utmost importance that a temporary restraining order should be issued by your Honor in vacation of said Supreme Court, to restrain said defendants from all further proceedings in the matters set forth and referred to in said complaint and exhibits, during the vacation of said Supreme Court, and until its further order." Then other and additional reasons were alleged why the injunction should issue. This further statement appears in the petition: "Plaintiffs further state that the granting of the injunction herein prayed for will work no injury or detriment to the defendants; that it will only result, so far as the defendants are concerned, in a postponement of the election, if said act is hereafter adjudged to be constitutional; that said injunction will, in all respects, merely result in the maintenance of the *status quo* of the parties, property and interests herein involved."

On July 18 Chief Justice BUNN refused to enjoin the holding of the election, allowing the proceedings to go to the extent of holding the election, counting the votes, and completing the election returns, but enjoined the declaration of the result and from entering the same on the record of the proceedings of the council of North Little Rock, and enjoined North Little Rock from doing any act towards the assumption of jurisdiction or control over the property or affairs of the Eighth Ward, or the exercise of any municipal function whatever over the same, and from interfering with the existing jurisdiction of the city of Little Rock, until the further orders of the Supreme Court, or of one of the judges thereof. It was further ordered that the ballots and returns of the election were to be counted and cast up and transmitted to the council of North Little Rock, and, without opening or further action thereon, were to be kept until the further orders of the Supreme Court, or one of the judges thereof.

The act under which this proceeding was held provided that, if a majority of those voting at the election should vote in favor of annexation, the council "shall so declare, and enter (it)

upon its record book of proceedings." And "thereafter the said. consolidated territory, and the inhabitants thereof, shall constitute a municipal corporation of this State," etc. The declaration of the vote in favor of annexation, and the record thereof, constituted the point where the jurisdiction of the enlarged corporation began. The Chief Justice allowed the proceedings to go to this point, but arrested the changes of jurisdiction until the appeal was heard and determined. The vote at the election, July 21, resulted in 475 votes for annexation, and 44 against it. The returns were counted, cast up and delivered pursuant to the order, but the. declaration and record of the results were stayed by the injunction. On February 6, 1904, the Supreme Court affirmed the decision of the chancellor, and on February 22 time for filing motion for reconsideration was waived, the injunction dissolved, and the annexation proceedings then completed. On the 25th of June, 1903, the same being after the election was ordered and before it was held, the council of the city of Little Rock granted to the street car company a franchise to build and maintain a street railway over certain streets in the Eighth Ward. The franchise, however, contained conditions, so far as material, in substance as follows: That before the rights conferred should be enjoyed the free bridge over the Arkansas River (the Eighth Ward being on the North side of the river) should be so strengthened as to bear with safety the weight of the cars. Details in regard to this were provided for in the ordinance. The next condition is: "Nor shall said rights herein granted be enjoyed until the grant hereby made of a right of way over the said free bridge has been confirmed by the county court of Pulaski County." The bridge was constructed by the county of Pulaski, and not by the city of Little Rock. It was further provided that the grant would be void unless within thirty days after said confirmation by the county court the street car company should begin the work of laying tracks and strengthening the bridge, and prosecute the work with reasonable dispatch, and complete it within eighteen months; but it was provided that, if the work was stopped by judicial proceeding, the time it was so suspended should be excluded. The ordinance provided that it should not be operative until the street car company should accept its terms and

conditions in writing within five days, and deposit with the city treasurer $10,000 in cash, or, at its option, a good bond in that sum, conditioned to comply with the terms of the ordinance, and containing, among others, this condition: "If the county court declines to confirm the right of way herein granted, then the council reserves the right to revoke this ordinance at such time as it sees fit, or wait on said confirmation at its option." In another section it is provided that such confirmation shall not be necessary if there is obtained a final judgment of the Supreme Court holding the right of way valid without such confirmation. It is conceded that no litigation has been begun or had wherein this question could be finally passed upon by the Supreme Court.

The final section is that the ordinance should be a binding contract between the city of Little Rock and the street car company upon its passage and the acceptance in writing and depositing the cash or bond. The ordinance was duly passed, it was accepted in writing within the time, and the bond duly made and delivered. On the 10th of August, 1903, the city council of Little Rock materially amended this ordinance. The part important here is that the provision requiring confirmation of the grant of right of way by the county court of Pulaski County to be obtained before any rights therein conferred became operative was stricken out, and the company given an absolute franchise to construct and maintain a street car line over certain streets in the Eighth Ward. Similar provisions were made as to acceptance in writing, the giving of bond, and other matters not entering into this case. This was passed as stated, on the 10th of August, while the injunction suit was still pending in the Supreme Court, and while the temporary injunction of Chief Justice BUNN was in force. After the passage of this ordinance, and before the case was finally determined, the street car company began the construction of its line in the Eighth Ward, laid considerable track, and spent in all about $27,000 on the work. It was not completed in any part, nor ready for operation, when the decision in the injunction suit was rendered by the Supreme Court. After the latter event the town of North Little Rock, which had been advanced to

the grade of a city of the first class, brought this suit to annul the franchises, and succeeded in the chancery court.

*Ashley Cockrill* and *Rose, Hemingway & Rose,* for appellant.

A city has control of its streets and alleys, with the duty of keeping them open and free from nuisance. 2 Dill. Mun. Corp. § § 656, 658, 680, 683; 51 Ark. 491; Elliott, Roads & Streets, § § 16, 17, 739, 741; Angell, Highways, § 301; 23 Am. Dec. 302; 8 B. Mon. 237; 10 Pet. 662; 16 Pet. 431; 65 L. R. A. 566; Elliott, Roads & Streets, 321, 327; 27 Fed. 412; 72 Wis. 617; 87 Ill. 348; 171 U. S. 48; 40 Pac. 560; 2 Dill. 82; 9 Bush, 127; 10 Wall. 38; 27 Am. & Eng. Enc. Law, 16, 150; 56 Fed. 867; 166 U. S. 557; 18 Oh. St. 292; 76 Fed. 271; 33 Oh. St. 336; 66 Fed. 140; 42 La. Ann. 188; 66 Ind. 396; 8 Cal. 453; 48 Cal. 493; 19 Colo. 236; 160 N. Y. 377; 64 S. W. 106; 44 S. E. 371. A city has no proprietary rights in the streets or franchises for street use. 61 Neb. 109; 71 N. H. 367; 87 Me. 151; 96 Ill. 232; 166 U. S. 565; 148 Mass. 375; 74 Am. Dec. 358; 18 So. 84; 24 Ia. 469; 27 Fed. 412. A city cannot divest itself of the power given by the Legislature, except as the law authorizes. 24 Fed. 306; 76 Fed. 283; 8 Bush, 417; 5 Cow. 538; 59 N. Y. 228; 194 U. S. 534; 9 Mich. 165; 33 Ohio, 367; 56 Fed. 867; Angell, Highways, § 301; 48 Miss. 710; 52 Miss. 723; 26 Mo. 97. A change in territory is not operative until the board in control of the annexation declares the result of the election, and enters it upon the minutes. 24 Am. & Eng. Enc. Law, 277; 53 Ark. 145; 27 Mo. 97. A rule of equity will not be applied to override the express provisions of the statute. 166 U. S. 565. There cannot be, at the same time, two distinct municipal corporations, exercising the same powers and privileges. 1 Dill. Mun. Corp. § 184; Grant, Corp. 18; 5 So. 818; 18 Tex. 874; 31 Pa. St. 515; 16 How. 164; 4 Wheat. 246; 9 How. 614. Vested rights cannot be affected by a change in territory. 16 Am. & Eng. Enc. Law, 1128; Hall's Int. Law, § 4; 4 Pet. 511; 20 How. 20, 10 Wall. 224; 12 Pet. 410; 21 Wall. 521; 10 Pet. 331; 7 Pet. 51; 161 U. S. 208; 98 U. S. 494; 139 U. S. 588; 10 Pet. 736; 8

The function of injunction is to stay threatened action and suspend conflicting claims of right of the restricted parties, where they then are, until they can be adjudicated. 1 Beach, Inj. § 343; 134 Ill. 603; 2 Dan. Ch. Pr. 1633, 1639; 2 McCrary, 642; 36 Wis. 355; 50 Ill. 460. The first ordinance was passed before the injunction was granted, and was a present right, with the enjoyment postponed for a future time. 50 Ark. 367. The right of Little Rock over its streets and to provide street railways upon them is conferred for public benefit. It could not by contract abdicate the right, and it could not accomplish by estoppel what it was forbidden to do by contract, 55 Ark. 318; 38 S. E. 60; 27 N. Y. 611; 24 Fed. 306. There can be no inquiry into the motives of the city council in granting the franchise. 160 N. Y. 377; 64 S. W. 106; 9 Pet. 311. When the council gave the appellant the right to build its street railway, it contemplated its existing limits. 2 Dill. Mun. Corp. § 658; 37 Mich. 195; 20 Oh. St. 7. The street railway has the right to mortgage its properties. Booth, St. Rys. § 423; 114 U. S. 501; 111 N. Y. 1; 52 Fed. 56; 76 Fed. 299; 31 S. E. 125.

*James P. Clarke,* for appellee.

There is no uncertainty as to the status of a city in the matter of interests owned and controlled by it in the streets and alleys and other highways within its limits. 50 Ark. 466; 24 Ark. 102; 32 Conn. 579; 17 L. R. A. 477; Kirby's Dig. § 5448. After the decision of the Pulaski Chancery Court, it was not within the competency of the town of North Little Rock to make other than a defeasible grant of the streets which were then in process of being taken beyond her borders. 76 Fed. 282; Dill. Mun. Corp. § 66; 66 Fed. 140; 9 Cal. 453; 132 Pa. St. 288; 42 La. Ann. 188; 3 Wash. 316; 21 L. R. A. 519; 16 L. R. A. 485; 66 Ind. 396; 49 N. J. L. 558; 33 Oh. St. 336. After the election was ordered on the 21st day of July, 1903, the final act of annexation was carried back to the day the election was ordered, and cut off every conveyance which was not consummated before the act ordering the election on the 15th day of June. 92 U. S. 330; 28 Mich. 397; 58 Ill. 310; 26 Mo. 100; Broom's Leg. Max. 128; 48 Miss. 710; 52 Miss. 723; 194 U. S. 394;

10 Pet. 615; 98 U. S. 438. This proceeding is an attempt to pervert the action instituted into one for despoiling an adversary when his hands are tied. 25 N. E. 588; 134 Ill. 603; 2 McCr. 642; 36 Wis. 355; 4 Beav. 130; 2 Tenn. Chy. 728; 26 L. R. A. 593. One taking a mortgage *pendente lite* is bound by result of suit. 30 Ark. 249; 96 Ala. 421; 11 Ark. 411; 57 Ark. 229; 12 La. Ann. 776; 29 Ark. 85; 130 U. S. 565; 141 U. S. 648; 131 U. S. 353; 144 U. S. 119; 59 Fed. 811. The decree of the court below is not cancelled by appeal. 101 Fed. 669; 83 Ky. 274; 91 Ky. 625; 11 Ark. 675; 29 Ark. 80; 45 Ark. 373; 100 U. S. 81; 11 Miss. 143; 12 Miss. 289. It would be a mockery of justice to dissolve the injunction and leave defeated defendant in possession obtained by the injunction. 35 N. Y. 477; 35 Oh. St. 646; 139 U. S. 216; 132 N. Y. 362. A purchaser pending an appeal takes at his peril. 3 N. Y. 328; 51 Ark. 318. An affirmance of the decree is a reversal of the order granting injunction. 14 La. Ann. 57; 28 Cal. 75; 29 Ark. 95. Judgment of affirmance neither satifies, merges nor extinguishes judgment below. 11 Miss. 143; 140 Ill. 193; 14 How. 28, 312; 34 Ark. 580; 31 Oh. St. 28; 68 Me. 334; 51 Me. 149; 50 Am Dec. 119; 43 Am. Dec. 126; 57 Ark. 229.

*Ashley Cockrill* and *Rose, Hemingway & Rose,* for appellant in reply.

The authority of the council to grant street railway franchises is a power, and not a property, and its exercise is proprietary. 76 Fed. 282; 24 Fed. 306; 41 Fed. 558; 191 U. S. 221; 194 U. S. 543; 25 Sup. Ct. Rep. 327.

HILL, C. J., (after stating the facts.)   1.   The franchise sought to be enjoyed was granted by the council of Little Rock, August 10, 1902, when the jurisdiction of the city of Little Rock over the Eighth Ward thereof, where the franchise was to have been enjoyed, would have ceased for all purposes but for the injunction granted for the instance of the city of Little Rock, this appellant company, and other parties to the suit.

One of the grounds relied upon for the injunction was the probability  that the other municipality seeking to absorb this territory would grant therein street car franchises conflicting with

those theretofore granted by the city of Little Rock. So far as this record shows, the franchise to this company, granted subject to several conditions set out in the statement of facts, was the franchise sought to be protected against encroachment and conflict. This franchise was amended after the injunction, so as to take out the conditions which prevented it from becoming at once operative. The injunction was granted upon this and other allegations, and unquestionably was intended to preserve the *status quo* of the two municipalities, so far as the Eighth Ward was concerned, pending the appeal to determine whether or not the proceedings for its annexation to North Little Rock were valid.

Lord Chancellor Eldon held that where a party obtained an injunction which prevented his adversary from pursuing and enjoying rights, and the injunction was finally dissolved, the party could not take advantage of any rights which he had thus wrongfully prevented his adversary from enjoying. The Lord Chancellor said: "If there be a principle upon which courts of justice ought to act without scruple, it is this, to relieve parties against that injustice occasioned by its own acts or oversights, at the instance of the party against whom the relief is sought. That proposition is broadly laid down in some of the cases." In such cases it is reasoned by the great chancellor that the plaintiff, seeking relief by the mere circumstances of filing the bill, would be required to submit to every thing conscience and justice required. That the plaintiff seeking the relief impliedly says that he asks it on the terms of putting his adversary in exactly the same situation if it be determined in his favor. *Pulteney* v. *Warren,* 6 Vesey, Jr., 73.

This principle has found secure lodgment in equity jurisprudence, and is applied to varying kinds of cases involving its application. Frequently it is applied when an injunction stays an action, and it becomes barred, or right to execution lapses; and in many cases where an injunction wrongfully prevents the assertion of a right, or causes it to lapse, then the court treats the plaintiff wrongfully causing this effect to be reciprocally bound by the injunction. *Mercantile Trust Co.* v. *St.*

*L. & S. F. Ry. Co.,* 69 Fed. Rep. 193; *Hutsonpeiler* v. *Storer,* 12 Gratt. (Va.) 579; *Marshall* v. *Minter,* 43 Miss. 666; *Work* v. *Harper,* 66 Am. Dec. 549; *Sugg* v. *Thrasher,* 30 Miss. 135.

Chief Justice SCHOLFIELD in applying this doctrine in a case in Illinois, said:

"The only function of an injunction is to stay threatened action and suspend the conflicting claims of right of the respective parties where they then are until they can be properly adjudicated. 2 Daniell, Ch. Pr. (5th Ed.) 1639, and note. And so it must necessarily follow that to allow one party to obtain any advantage by acting when the hands of the adverse party are thus tied by the writ or the order for it is an abuse of legal process which cannot be tolerated." *Lake Shore & M. S. Ry. Co.* v. *Taylor,* 134 Ill. 603, s. c. 25 N. E. 588.

While the hands of the town of North Little Rock were effectually tied by the injunction sought at the instance of the city of Little Rock and the street car company, then the street car company obtained from its co-plaintiff the franchise in question in territory over which the city of Little Rock would not have had at that time a vestige of jurisdiction except by reason of the injunction preserving the *status quo* in regard to franchises as well as police and municipal control. The statement of the situation shows more clearly than argument that it is inequitable to allow rights to be thus acquired.

It is argued that these cases proceed upon the ground that the party obtaining the injunction has violated its spirit, or that the restraining party took advantage of something he could not have had before, or that the position of the party enjoined was more favorable before the injunction. Many of the cases do proceed on such propositions, but the underlying principle is that the injunction acts reciprocally, and binds in spirit the moving party, while binding expressly the other.

While the city of Little Rock could have granted an absolute franchise the day it obtained the injunction, it did not do so, and when it did grant the absolute franchise, the city of North Little Rock was then under injunction from granting such franchise. If it had not been under such injunction, it could

have been granted a franchise over these streets, and the city of Little Rock could not have done so. The court is of the opinion that the principles of these cases apply to this case.

2. Counsel for the appellant contends that the city has no property interests in the streets; that it is a mere agent of the State, to whom the State has delegated control of the streets, and the State, in the first instance, and the city, in the second instance, is but a trustee for the public. Many authorities are cited on this proposition, and it is summed up in a recent case in the Supreme Court of the United States in this language:

"The statutes show that there was lodged by the Legislature of Ohio in the municipal council of Cleveland comprehensive power to contract with street railway companies in respect to the terms and conditions upon which such roads might be constructed, operated, extended and consolidated. * * * That, in passing ordinances based upon the grant of power referred to, the municipal council of Cleveland was exercising a portion of the authority of the State, as an agency of the State, cannot in reason be disputed." *Cleveland* v. *Cleveland City Ry. Co.,* 194 U. S. 517.

The argument of counsel on this line is fully conceded as established in principle and by authority. But it does not follow from this status of the city that it may by its own act prolong its governmental agency, and grant rights otherwise divested from it by the State. In this case the State by appropriate legislation authorized the transfer of the control of the streets in question from one agent to another agent. The holding agent prolonged its holding by this injunction, contrary, as it was afterwards determined, to the act of the Legislature. Can it be said that on account of these governmental functions it is freed of the ordinary rules governing litigants? In *Fort Smith* v. *McKibbin,* 41 Ark. 45, the statute of limitations was invoked against the city's control of an alley of the city of Fort Smith. The doctrine of governmental agency was there presented, but this court held, on a conflict in the authorities, that the weight of authority and the better reason was in favor of applying the statute. In *Searcy* v. *Yarnell,* 47 Ark. 269, this court quoted

approvingly from *Bailey* v. *Mayor of New York,* 3 Hill, 555, as follows: "A municipal corporation, when in the exercise of franchises and the prosecution of works for its own emolument or advantage, and in which the State in its sovereign capacity has no interest, is answerable as a private corporation, although such works may also be in the nature of 'great enterprises for the public good,' and 'granted exclusively for public purposes belonging to the corporation in its public, political or municipal character.' Powers granted for private advantages, though the public may also derive benefit therefrom, are to be regarded as exercised by the municipality as a private corporation." In that case an estoppel was invoked against the town of Searcy. In fact, an estoppel may be invoked against the government of the United States, the government of a State, or a municipality. *Indiana* v. *Milk,* 11 Fed Rep. 389, and numerous authorities there cited; *La Fayette Bridge Co.* v. *Streator,* 105 Fed. Rep. 729; *United States* v. *La Chapelle,* 81 Fed. Rep. 152.

In the case of *Indiana* v. *Milk, supra,* Judge Gresham said: "Resolute good faith should characterize the conduct of States in their dealings with individuals, and there is no reason, in morals or law, that will exempt them from the doctrine of estoppel." If the State may be estopped, certainly the agent of the State, who prolongs the power of the State in itself, may be estopped by reason of its action in so prolonging this power.

Passing, however, from the governmental agency of the city to the result of the action of the city in pursuance of this agency, in the recent case, heretofore referred to, of *Cleveland* v. *Cleveland City Ry. Co.,* 194 U. S. 517, the court said: "That in the courts of Ohio the acceptance of an ordinance of the character of those just referred to is deemed to create a binding contract" is settled. (Citing authorities.) Then the court considered the question as one of general law, without treating the decisions of Ohio as binding. and reached the same conclusion. A like view is taken of the question in this State. "Now, a grant which has been accepted and acted upon by the grantee is a contract, within the meaning of the Constitution of the United States, which forbids laws impairing the obligation of contracts." *Hot Springs Electric Light Co.* v. *Hot Springs,* 70

Ark. 300. This is the general rule. McQuillin, Mun. Ord. § 238.

The grants in this case were duly accepted, and constituted contracts; and hence it follows, aside from any estoppel of the governmental agent, that the grant in question was a contract right, and subject to all the protection and liability of other contractual rights, and among the latter is the sound equitable rule that such rights can not be acquired in violation of an injunction obtained for the benefit of the contracting parties. All of these reasons would be applicable if a stranger had obtained the franchise; but when it is obtained from one party to the injunction in favor of a co-plaintiff therein, they are doubly applicable. Without pursuing the question further, the court is of opinion that neither the city of Little Rock nor the street car company can hold rights acquired over the streets of the Eighth Ward during the life of the injunction.

3. An estoppel is sought against the town of North Little Rock on account of its permitting the street car company to partially construct its line over these streets, and expend about $27,000 without protest or resistance. The city of North Little Rock was enjoined from interfering in any manner with the jurisdiction and control of the city of Little Rock over the Eighth Ward. The street car company was acting with open eyes; if it won its injunction suit, its rights were perfect, and necessarily it knew that, if it lost, its rights were builded solely on rights acquired while it tied the hands of the other municipality from exercising control over these streets. The case does not call for an estoppel on this ground against North Little Rock.

The decree in the court below allowed the street railway company sixty days to dispose of or remove the rails, cross ties and other material placed by it on the streets, and that is as favorable as it can ask on this score.

4. Deciding that no rights can be sustained under the ordinance of August 10, 1902, does not dispose of any rights which the street car company may have under the ordinance passed June 25, 1902. It is true that the ordinance of August 10 repealed the conditions precedent therein to its vesting

at once, and attempted to vest the franchise forthwith; but the view the court takes of that ordinance renders that action entirely nugatory, and leaves in force whatever right the street car company may have had when the jurisdiction of the municipalities over the Eighth Ward would have been changed but for the intervention of the injunction. The appellee seeks to avoid that proposition by invoking the doctrine of relation, and contends that the final act of annexation was carried back to the date the election was ordered, June 15, 1903. That contention overlooks the plain provision of the act under which the proceedings were had. It declares that, upon the declaration of the vote favorable to annexation by the council and entering it upon the record of the council such actions constitute the change of jurisdiction. Those acts raise the new flag over the territory annexed.

The obtaining of the consent of the county court of Pulaski County to the use of the free bridge before the franchise could be enjoyed was clearly a condition precedent to it vesting, and was a reasonable and enforcible condition precedent. Joyce on Electric Law, § § 187, 352, 358, and authorities cited in notes.

This and the other conditions mentioned in the ordinances would have to be complied with within a reasonable time. In determining reasonable time the subject-matter and all the circumstances are to be considered, as there can never be a fixed rule on such a subject. In this case the ordinance was passed June 25, 1903, and the election was held July 21, and the result would have at once been declared, and the jurisdiction changed, but for the injunction. The rights of North Little Rock must be determined as of date when it should have acquired jurisdiction. That date was less than one month after the passage of the ordinance. Therefore North Little Rock assumed jurisdiction over the Eighth Ward subject to a valid ordinance granting a franchise to certain streets therein subject to conditions precedent to be performed in a reasonable time from June 25, 1903. The subsequent proceedings did not alter that status, for the jurisdiction, when assumed in February, 1904, was, so far as these parties were concerned, as of date July 21, 1903, or as soon thereafter as the vote could be declared. The rights

acquired after that date should be cut off, and those acquired prior thereto given full force.

The court is of opinion that one month was not reasonable time to allow the street car company to comply with the conditions precedent, and it follows, therefore, that the street car company still has a reasonable time, under the ordinance of June 25, 1903, to comply with the conditions precedent.

The decree of the chancellor cancelling and annulling the ordinance of June 25, 1903, is erroneous, and the same is hereby reversed. The decree cancelling and annulling the ordinance of August 10, 1903, and all other matters therein, except as above stated, is affirmed.

BATTLE, J., (dissenting.) Judge Dillon says: "Public streets, squares, and commons, unless there be some special restriction, when the same are dedicated or acquired, are for public use, and the use is none the less for the public at large, as distinguished from the municipality, because they are situated within the limits of the latter, and because the Legislature may have given the supervision, control and regulation of them to the local authorities. The Legislature of the State represents the public at large, and has, in the absence of special constitutional restraint, and subject to the property rights and easements of the abutting owner, full and paramount authority over all public ways and public places."

He further says: "Whether the fee of the street be in the municipality in trust for the public use, or in the adjoining proprietor, it is in either case of the essence of the street that it is public, and hence, as we have already shown, under the paramount control of the Legislature as the representative of the public. Streets do not belong to the city or town within which they are situated, even although acquired by the exercise of eminent domain, and the damages paid out of the corporation treasury. The authority of municipalities over streets they derive, as they derive all their other powers, from the Legislature—from charter or statute. The fundamental idea of a street is not only that it is public for all purposes of free and unobstructed passage, which is its chief and primary, but by no

means sole, use." 2 Dillon on Municipal Corporations, § § 656,. 683.

"The city corporation, as freeholder of the streets and highways in trust for public use, is but an agent of the State. Any control which it exercises over them, or the power of regulating their use, is a mere public or governmental power delegated by the State, subject to its control and direction, and to be exercised in strict subordination ·to its will. The corporation, as such, has no franchise in connection with the use of the streets for the transportation of passengers." *People* v. *Kerr, 27* N. Y. 213 ; *Chicago* v. *Rumsey,* 87 Ill. 348, 355; *State* ex rel. v. *Madison St. Ry.,* 72 Wis. 617, 619; *Stanley* v. *Davenport,* 54 Iowa, 463.

Neither the State nor the cities have any proprietary interest in the streets. The public they represent has no interest in the soil. *Reichardt* v. *St. Louis & S. F. Ry. Co.,* 51 Ark. 491, 497. The power and control either has over the same is governmental. When they grant an easement over the streets, not common to the public at large, they do so, not because they have any proprietary interest in the land, but because of their control over the streets in a governmental capacity. *San Francisco* v. *Spring Valley Waterworks,* 48 Cal. 493, 529; *Detroit* v. *Detroit City Ry.,* 56 Fed. 867, 874; *City Ry.* v. *Citizens Ry.,* 166 U. S. 557, 563.

Under  the statutes of this State, city councils have the care, supervision and control of · all the public highways, streets and alleys within the city, and may grant an exclusive privilege of the streets of the city for street railway purposes for such term of years as they may agree upon. Kirby's Dig. § § 5530, 5448. This power extends to all the streets within the city, and continues so long as they remain in the city, regardless of the time they have been in or may remain in the city. It · is. exclusively governmental. The streets in question in this case,. together with the care, supervision, control and power over the same, remained in the city of Little Rock until the 22d day of February, 1904, when they became a part of the city of North Little Rock, according to the act entitled, "An act to amend the laws in relation to municipal corporations," approved March 16, 1903. Acts of 1903, page 148.

The ordinances in question were passed by the city council of Little Rock while the streets of which they were the subjects of legislation were in that city, and within its territorial jurisdiction; and as an incident to that jurisdiction it had the power to pass them. Appellant accepted them, and undertook, by the expenditure of considerable sums of money and labor, to construct a railway over the streets according to the terms thereof. The ordinance thereby became a valid contract, binding upon the public, the city of Little Rock and of North Little Rock. *State v Madison St. Ry.,* 72 Wis. 617, 619; *City Ry.* v. *Citizens Ry.* 166 U. S. 557, 563; Elliott on Roads and Streets, § § 741, 742; 27 Am. & Eng. Enc. Law (2d Ed.), 15.

I think the ordinances should be sustained.

Wood, J., concurs in this opinion.

ON REHEARING.

Opinion delivered September 30, 1905.

McCulloch, J. Both parties seek a rehearing of the cause. Appellant asks that we set aside that part of the decision holding that ordinance No. 1019, passed August 10, 1903, is void, and that appellant acquired no rights thereunder, and appellee asks that we set aside that part of the decision holding that ordinance No. 1002, passed June 25, 1903, conferred a valid franchise.

Upon consideration we adhere to the conclusion heretofore announced, and both petitions for rehearing will be overruled.

Counsel for appellee insists that when the disannexation of territory was accomplished, the power reserved in ordinance No. 1002 by the city of Little Rock to revoke the franchise upon the refusal of the county court to confirm the right of way over the free bridge, as well as all other rights and powers reserved to that municipality, passed to the city of North Little Rock, and that the latter could then properly exercise the power of revocation. He contends that we should, for that reason, hold that appellant had no existent rights in the franchise conferred

by that ordinance. It is sufficient to say, in response to that contention, that the condition upon which the power of revocation rests, *i. e.,* the refusal of the county court to confirm the right of way over the free bridge, is not shown either in the pleadings or proof in this case to exist. Appellee's complaint alleges that application to the county court to confirm the right of way had never been made, and appellant's answer expressly admits this to be true. J. A. Trawick, the manager of appellant company, testified (which was all the testimony on the subject) that no application was made to the county court, though he had reason to believe, he says, from information received that permission to cross the bridge would not be granted.

The question of revocation is, therefore, not presented to us in this record, and we cannot properly pass upon it.

We merely held in the former opinion that ordinance No. 1002 conferred a valid franchise, and that at the time of the commencement of this suit an unreasonable time for the performance by the grantee of the conditions precedent therein named had not elapsed.

Whether or not it is now too late for appellant, under the circumstances, to perform them and preserve the granted rights; whether the power of revocation passed to appellee upon the disannexation of territory, and, if so, under what circumstances it may be exercised; and whether or not appellant may proceed to the enjoyment of the franchise without obtaining from the county court the right of way over the bridge, are all questions which we have not decided, and do not deem it necessary or proper upon the record in this case to decide. They must be brought before us in proper proceedings, and upon appropriate allegations and proof, before a determination can be reached.

Appellant asks further that the judgment of this court be modified so as to permit the tracks constructed under the franchise by appellant before the commencement of this suit to remain in the streets of North Little Rock pending further proceedings by appellant to test and secure enjoyment of its alleged rights under ordinance No. 1002, and to restrain said city from disturbing said tracks during such further proceedings. This, however, is provisional relief, which must be granted,

if at all, by the court of original jurisdiction in which such further proceeding is instituted, subject to review on appeal. We cannot grant it in this suit. Nothing in this decision will bar such relief, if appellant be shown in other respects to be entitled to it. Following the decree of the chancellor, appellant has in the original judgment here been allowed sixty days in which to dispose of or remove the tracks and material now on the streets of North Little Rock, and said period will run from this date.

To that extent the judgment heretofore entered here will be modified. In all other respects it will stand.